IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| OSLER LORAYMOND CHILDRESS and GEORGIA CHILDRESS,<br><br>Plaintiffs,<br><br>vs.<br><br>MIDVALE CITY, SALT LAKE COUNTY, KEN YURGELSON, NORM BETTRIDGE, and JOHN DOES 1 through 8,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:09CV500DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant Robert Harms's Motion for Summary Judgment. A hearing was held on July 20, 2010. At the hearing, Defendant was represented by David H.T. Wayment, and Plaintiff was represented by M. David Eckersley. The court took the matter under advisement. After carefully considering the materials submitted by the parties and the law relevant to the motion, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Osler LoRaymond Childress is an individual residing in Davis County, Utah. Defendant Robert Harms ("Nurse Harms") was, at all times relevant herein, a jail nurse employed at the Salt Lake County Jail.

Mr. Childress was staying at a motel in Midvale, Utah on May 16, 2006. He purchased a bottle of beer and consumed some of it after 5 p.m. Sometime later that evening, Mr. Childress

talked on the phone with a friend who called the front desk after noticing that Mr. Childress's speech was slurred.  According to Mrs. Childress, who was not present during the issue in controversy, when the hotel worker stopped by Mr. Childress's room he told her that "everything was okay."  Mr. Childress made no efforts to get himself transported to the hospital.

At some point, three Midvale police officers and three paramedics arrived at Mr. Childress's room, where they found that things had been knocked over and someone had vomited.  Mr. Childress was having trouble walking and standing.  The paramedics determined that Mr. Childress was intoxicated, and the police smelled alcohol on his breath.  Mr. Childress has no memory of the paramedics being in his room.

Mr. Childress was taken to Salt Lake County Jail and presented to Nurse Harms, who was assisted by Nurse Joel Smith.  One of the police officers told Nurse Harms that Mr. Childress was under the influence of alcohol.  Although Mr. Childress denied drinking when Nurse Harms question him, Nurse Harms detected an odor of alcohol on his breath.  Nurse Smith, who was also a nurse at the Salt Lake County Jail, asked Mr. Childress questions about his military duties and testified that Mr. Childress answered them without any difficulty.  Nurse Harms conducted a brief physical and neurological examination, specifically evaluating Mr. Childress's pupil size and grip strength.[1]  After determining that Mr. Childress was bilaterally equal, Nurse Harms and Nurse Smith attributed Mr. Childress's condition to alcohol

---

[1] Nurse Smith stated that he and Nurse Harms also asked Mr. Childress to smile to see if his lips went up equally on both sides as part of the neurological evaluation.  Mr. Childress disputes this statement, relying on Nurse Harms's statement that they did not make him smile *while he was on the gurney*.  Although Mr. Childress's evidence does not preclude the possibility that the smile test was performed at another time when he was not on the gurney, for purposes of this motion and when viewed in the light most favorable to the non-moving party, the court assumes, for purposes of this motion, that the smile test was not performed.

intoxication, and he was place in a holding cell.  Mr. Childress has no memory of interacting with Nurse Harms.

While in the holding cell, Mr. Childress was evaluated by jail nurses at least four times over a span of approximately six hours.  At each examination, the nurses checked Mr. Childress's vital signs and Glasgow Coma Score.  When Mr. Childress fell down at around 6:00 a.m., Nurse Harms was involved in the decision to transport him to the hospital.  There, the triage nurse smelled alcohol on Mr. Childress and noted a history of alcohol use.  However, he was diagnosed at the hospital as having suffered a stroke.  At some point after Nurse Harms was relieved from his shift, he called the jail and asked if anyone knew about Mr. Childress's condition, but it was not until he went into work several days later that he heard about the stroke.

On or about February 13, 2007, Mr. and Mrs. Childress filed a civil rights claim in state court, alleging that Defendants Midvale City, Salt Lake County, Kresdo Bennett, Ken Yurgelson, and Norm Bettridge were deliberately indifferent to Mr. Childress's needs in violation of article I, section 9 of the Utah Constitution and the Eighth Amendment to the United States Constitution.  On April 8, 2009, the state court granted summary judgment in favor all defendants with the exception of Mr. Bennett.  The state court allowed Mr. Childress to add Nurse Harms as a defendant.  The case was then removed to the United States District Court.  This Motion for Summary Judgment is confined to the claims against Nurse Harms.

## DISCUSSION

### Defendant's Motion for Summary Judgment

Nurse Harms filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.  Summary judgment is proper when "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). An issue of material fact is genuine if the evidence is such that, when viewed in the light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court will first analyze whether summary judgment is proper as to Mr. Childress's claim under article I, section 9 of the Utah Constitution. Then, it will analyze whether summary judgment is proper as to Mr. Childress's claim under 42 U.S.C.S. § 1983 for a violation of the Eighth Amendment to the United States Constitution.

I.     **Cause of Action Under Article I, Section 9 of the Utah Constitution**

Article I, section 9 states: "Excessive bail shall not be required; excessive fines shall not be imposed; nor shall cruel and unusual punishments be inflicted. Persons arrested or imprisoned shall not be treated with unnecessary rigor." Utah Const. art. I, § 9 (2010). The Utah Supreme Court has held that the plaintiff must establish that he or she has suffered a flagrant violation of his or her constitutional rights in order to proceed with a private suit for damages under article I, section 9. *Dexter v. Bosko*, 2008 UT 29, ¶ 22. The flagrant violation standard ensures that a government employee is allowed the ordinary "human frailties of forgetfulness, distractibility, or misjudgment without rendering him or herself liable for a constitutional violation." *Id*. at ¶ 23. A flagrant violation occurs when (1) the nature of the act presents an obvious and known serious risk of harm to the arrested or imprisoned person, and (2) knowing the risk, the official acts without other reasonable justification. *Id*. at ¶ 25.

   A. **The nature of the act must present an obvious and known serious risk of harm to the arrested or imprisoned person.**

The first prong of the flagrant violation standard is composed of three parts: (1) there must be an act; (2) the act must present a serious risk of harm to the detainee; and (3) the serious

4

risk of harm must be obvious or known to the actor. The act under scrutiny was Nurse Harms's decision to admit Mr. Childress into the jail when it turned out that he was suffering from a stroke. A stroke is a life-threatening condition. There is no question that failing to provide adequate medical treatment to Mr. Childress in his condition presented a serious risk of harm to him. Therefore, the issue this court must address is whether the risk was obvious or known to Nurse Harms.

When Mr. Childress was initially presented to Nurse Harms, Nurse Harms recognized that Mr. Childress's symptoms were indications of a possible stroke. Although Nurse Harms was told that Mr. Childress was brought in for alcohol intoxication, he and Nurse Smith performed a neurological evaluation, specifically checking Mr. Childress's pupil size and grip strength. They concluded that Mr. Childress was bilaterally equal, which led them to attribute Mr. Childress's condition to another cause—alcohol intoxication. Therefore, there is no evidence that a serious risk of harm was obvious or known to Nurse Harms at that point.

**B. Knowing the risk, the official must act without other reasonable justification.**

Mr. Childress argues that Nurse Harms's knowledge of the symptoms precludes summary judgment, giving rise to a jury question about the reasonableness of assuming that Mr. Childress was merely drunk. However, Mr. Childress may not escape summary judgment if the evidence and inferences drawn therefrom are such that a jury could not reasonably return a verdict in his favor.

Although Nurse Harms was incorrect in concluding that Mr. Childress was merely intoxicated, this court finds that no reasonable jury could find that Nurse Harms acted unreasonably. The only evidence Mr. Childress has provided in an attempt to create a disputed material fact is that Mr. Childress denied to Nurse Harms that he had been drinking, and

testimony from Dr. Elaine Skalabrin, Mr. Childress's expert witness, stating that "any competent nurse would have as a differential diagnosis that Mr. Childress was suffering from a stroke."

These disputed facts, however, do not preclude summary judgment. Police officers, paramedics, jail nurses, and a triage nurse at the hospital all noted the scent of alcohol on Mr. Childress's breath. Although Mr. Childress claimed that he had not been drinking, the smell of alcohol strongly suggested otherwise. Nurse Harms could reasonably disregard Mr. Childress's assertion, particularly when Nurse Harms was also told by police officers who brought Mr. Childress to the jail that Mr. Childress had been drinking.

Dr. Skalabrin's opinion loses its persuasiveness in light of the fact that three paramedics and one other jail nurse also arrived at the same conclusion as Nurse Harms. Furthermore, Dr. Skalabrin admitted that the signs of a stroke and the signs of intoxication may be similar. Nurse Harms offered the statements of two experts who testified that his actions were reasonably justified. Registered Nurse Sandra Slosberg, a certified correctional health professional, said that "symptoms of alcohol on breath, slurring of speech, ringing in ears and dizziness are not unusual in a person under the influence of alcohol being accepted into a jail facility." She also stated that "approximately 90% of the arresting population presents with these identical symptoms, and it would be a very rare occurrence for an individual to be having a cerebral vascular accident."

Dr. Joel Nitzken, an expert on public health, stated that "the nurses and paramedics are trained in doing, and did do, an appropriate neurological examination to detect ischemic or hemorrhagic strokes, but that their training would probably not have allowed them to tell the

difference between alcohol intoxication and the type of cerebellar stroke that Mr. Childress suffered."[2]

This court finds that even when the disputed facts are viewed in the light most favorable to Mr. Childress, no reasonable jury could conclude that Nurse Harms is liable for anything more than the ordinary human frailty of misjudgment.[3] However, the standard for a constitutional violation under article I, section 9 is higher. A jail is not a hospital, and its primary purpose is not the diagnosis and treatment of medical malady. Prison officials do not have ready access to sophisticated medical equipment. Unfortunately, the circumstances in this case suggested that Mr. Childress had been drinking when, at some point, he suffered a tragic stroke. Given the smell of alcohol on his breath, the conclusions of several people (paramedics and jail nurses) that he was intoxicated, and the fact that his symptoms and behavior were consistent with alcohol intoxication, and the lack of any indication of stroke led to the misdiagnosis of his condition. While he was misdiagnosed, no reasonable jury could find that Nurse Harms committed a flagrant violation of Mr. Childress's rights. Therefore, summary judgment is granted in favor of Nurse Harms as to the cause of action under article I, section 9 of the Utah Constitution, and that claim against him is dismissed.

---

[2] Mr. Childress argues that the opinions of Dr. Nitzken and Nurse Slosberg are inadmissible according to *Specht v. Jenson*, 853 F.2d 805, 809 (10th Cir. 1988), *cert. denied*, 488 U.S. 1008 (1989). In *Specht*, the court stated that expert testimony on ultimate issues of law is inadmissible. However, these opinions do not go to the ultimate issue but rather shed light on the context in which Nurse Harms was operating.

[3] If the circumstances had been different and Mr. Childress were asserting a claim for simple negligence or medical malpractice, the court recognizes that the evidence would probably be sufficient to preclude an entry of summary judgment.

**II.     Cause of Action Under 42 U.S.C.S. § 1983**

Deliberate indifference to a prisoner's serious medical needs amounts to cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976).  A claim that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment.  *Id*. at 105-06.  The deliberate indifference standard has an objective and a subjective component.  *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

The objective component is met if the harm suffered is "sufficiently serious" to implicate the Cruel and Unusual Punishment Clause.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  For purposes of this motion, Nurse Harms concedes that the harm Mr. Childress suffered was "sufficiently serious," and that the objective component has been met.

The court will analyze the undisputed facts against the subjective component of the deliberate indifference test.  It requires a showing that (1) the defendant knew of a substantial risk of harm to the plaintiff, and (2) disregarded that risk by failing to take reasonable measures to abate it.  *Id*. at 847.

**A. The defendant must have known of a substantial risk of harm to the plaintiff.**

Mr. Childress argues that Nurse Harms recognized the signs of a stroke in Mr. Childress, and therefore knew of a substantial risk of harm.  However, the U.S. Supreme Court has stated that to have the requisite knowledge under the subjective component of the deliberate indifference standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw that inference."  *Farmer*, 511 U.S. at 837.

Considering the disputed facts and drawing all inferences regarding the disputed facts in favor of Mr. Childress, the facts do not establish that Nurse Harms drew the inference that would indicate a substantial risk of harm. Although Nurse Harms recognized the possible symptoms of a stroke in Mr. Childress, those symptoms were also common to alcohol intoxication. Based on the evaluation of Mr. Childress's pupil size and grip strength, Nurse Harms and Nurse Smith ruled out the likelihood of a stroke.

Both Dr. Skalabrin's statement and the fact that Mr. Childress was actually suffering from a stroke rather than alcohol intoxication support only the assertion that Nurse Harms should have perceived Mr. Childress's actual condition, not that Nurse Harms actually perceived it. The Supreme Court stated "[i]t is not enough to allege that prison officials failed to alleviate a significant risk that they should have perceived but did not." *Id*. at 838. Furthermore, following Nurse Harms's assessment of Mr. Childress's condition, his actions are consistent with a finding that he subjectively believed Mr. Childress was merely intoxicated. Nurse Harms's behavior was appropriate for someone who was managing the risks associated with alcohol intoxication. Mr. Childress was placed in a holding cell away from other detainees and given time to "sober up." Jail nurses checked him four times in approximately six hours. When his condition worsened, Nurse Harms was involved in the decision to send Mr. Childress to the hospital.

Based on the aforementioned reasons and borrowing from the analysis in this court's assessment of Mr. Childress's claim under article I, section 9, this court finds no reasonable jury could conclude that Nurse Harms knew of the substantial risk of harm to Mr. Childress.

### B. The prison official must disregard the risk by failing to take reasonable measures to abate it.

Mr. Childress also argues that Nurse Harms disregarded the substantial risk of harm because he did nothing to determine if Mr. Childress was having a stroke. If Nurse Harms was

9

not subjectively aware of the substantial risk of harm to Mr. Childress, he could not have disregarded that risk. The undisputed evidence shows that Nurse Harms recognized that Mr. Childress's symptoms were indications of a possible stroke. However, the symptoms of a stroke and alcohol intoxication are similar. Nurse Harms evaluated Mr. Childress's pupil size and grip strength and did not detect inequality. Therefore, he took reasonable measures to abate the risks he knew to be associated with mere alcohol intoxication.

Nurse Harms misdiagnosed Mr. Childress. However, no reasonable jury could find that Nurse Harms was deliberately indifferent to Mr. Childress's needs. Accordingly, Nurse Harms's Motion for Summary Judgment is granted, and Plaintiff's claim against Nurse Harms under 42 U.S.C.S. § 1983 is dismissed.

## CONCLUSION

As set forth above, Defendant Robert Harms's Motion for Summary Judgment [Docket No. 9] is GRANTED, and all claims against him are DISMISSED with prejudice.

Also, because some parties and claims were dismissed by the state court prior to the removal of this case to this court, the court directs the parties file a joint status report within 30 days as to the remaining parties and claims and whether there is a need to amend the current scheduling order.

DATED this 27th day of August, 2010.

BY THE COURT:

Dale A. Kimball
United States District Judge